```
                  UNITED STATES BANKRUPTCY COURT
                 FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                          )
                                )    Chapter 7
H & W MOTOR EXPRESS             )
COMPANY,                        )
                                )    Bankruptcy No. 02-02017
       Debtor.                  )
------------------------------  )
LARRY S. EIDE,                  )
Chapter 7 Trustee,              )    Adversary No. 04-9099
                                )
       Plaintiff,               )
                                )
vs.                             )
                                )
LOIS LEX,                       )
                                )
       Defendant.               )
```

**ORDER RE: COMPLAINT**

This matter came before the undersigned on May 24, 2005 for trial. Larry Eide appeared as Plaintiff/Trustee. Attorney Brian Peters represented Defendant Lois Lex. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (F).

**STATEMENT OF THE CASE**

Trustee seeks to recover payments made by Debtor H & W Motor Express Company to Defendant Lois Lex. These payments were made close to the date Debtor filed its Chapter 11 petition. Trustee argues the payments are avoidable as preferences or postpetition transfers. Ms. Lex argues she properly received these payments in the ordinary course of Debtors' business.

**FINDINGS OF FACT**

Debtor filed a Chapter 11 petition on June 12, 2002. It voluntarily converted to Chapter 7 on September 17, 2002 and

Larry Eide was appointed Trustee.  Defendant Lois Lex was employed by Debtor H & W Motor Express Co. since 1956.  She was assistant and secretary to the president of the company.  Beginning in late 1996, Ms. Lex became secretary of the corporation through late 2000.  She again was appointed secretary of the corporation in May 2001.

Ms. Lex intended to retire from working for Debtor at the end of December 2000.  The family running the company asked her to stay on.  Starting in January 2001, Ms. Lex worked as a consultant for Debtor, rather than an employee.  Her duties were essentially the same as when she worked as Debtor's employee.  Ms. Lex worked as an independent contractor through the end of the company's operations in September 2002, when it converted from Chapter 11 to Chapter 7.

Debtor paid Ms. Lex $25 per hour as a consultant pursuant to her weekly statements.  Ms. Lex was never authorized to write checks on or otherwise withdraw money from Debtor's bank accounts.  She had no control over when she got paid, although Debtor usually paid her within a week of receiving her statements for services.  Prior to June 12, 2002, Debtor made all payments to Ms. Lex by check.

On the date Debtor filed its Chapter 11 petition, June 12, 2002, Debtor executed a wire transfer to Ms. Lex's account in the amount of $2,793.75.  This amount corresponds to her statements dated May 13 and May 20, 2002 for consulting services she performed for Debtor May 6 through May 18, 2002.  Ms. Lex testified that Debtor occasionally used wire transfers to make payments, and did so even more often near the time it filed the Chapter 11 petition.

It is unknown whether the wire transfer occurred before or after the Chapter 11 petition was filed on June 12, 2002 at 11:20 a.m.  Debtor's Wire Transfer Request is dated 6-11-2002.  The third page of Trustee's Exhibit 1 is a printout from Debtor's bank which shows the wire transfer was last modified by an employee of the Bank at 9:14 a.m. on June 12, 2002.  The Court finds it is unlikely the transaction wiring funds from Debtor's bank account to Ms. Lex's bank account was completed before 11:20 a.m. that day.  Based on the record presented, the Court makes a finding of fact that the June 12 wire transfer to Ms. Lex occurred postpetition.

On June 19, 2002, Debtor wire transferred the amount of $5,393.50 to Ms. Lex.  This amount correlates with four statements Ms. Lex prepared for her services between May 20, 2002 and June 14, 2002.  Debtor's Wire Transfer Request includes a hand-written note: "Post Petition Prepayment for Consulting Fees."  Ms. Lex testified that this note is inaccurate.  This wire transfer pays for prepetition services from May 20 through June 12, the petition date, and for 2 1/2 days thereafter through June 14, 2002.  Ms. Lex testified that she did not know why that notation was added to the Wire Transfer Request.

Ms. Lex also received wire transfers from Debtor to pay for her services for the next several weeks, through July 23, 2002.  After that date, Debtor paid her by check.  The Court entered an order on July 15, 2002 approving payment to Ms. Lex for contract services at $25 per hour for up to 40 hours per week.  This was a stipulated order which resolved Debtor's Motion regarding post-petition financing filed June 17, 2002 and a related hearing held June 28, 2002.  An Order was also filed June 14, 2002 granting Debtor's Emergency Motion for Post Petition Financing and Use of Cash Collateral.  This Motion, also filed June 14, 2002, requested financing and use of cash collateral "to pay day to day operating expenses, including but not limited to wages, repairs, and fuel."

After July 15, Ms. Lex billed Debtor for only 40 hours per week, although she actually put in additional hours of work.  Ms. Lex testified that she believes she was paid for all the services she billed, except for the last week or two just prior to Debtor's conversion to Chapter 7.  She has filed a Proof of Claim for $1,712.50 for services rendered between September 6 and September 17, 2002.

Trustee seeks to recover the June 12, 2002 payment in the sum of $2,793.75.  As this is found to be a postpetition transfer, the Court need not address Trustee's argument that it constitutes a prepetition preferential transfer under § 547(b).  Trustee argues that both the $2,793.75 paid with the June 12, 2002 wire transfer and $4,650.58 of the June 19, 2002 payment are recoverable under § 549 as postpetition transfers.

Ms. Lex argues that all payments made to her were made in the ordinary course of the business of Debtor.  Ms. Lex states that her services were essential to Debtor's business and

3

contributed to retention of value in Debtor's business and to preservation of business records. Arguing in the alternative, Ms. Lex asserts that if the payments are not in the ordinary course of business, they constitute priority wage claims.

## CONCLUSIONS OF LAW

Section 549 of the Bankruptcy Code provides that a trustee may avoid a transfer of property of the estate that occurs after the commencement of the case and that is not authorized. 11 U.S.C. § 549(a). A § 549 claim has four elements. In re Russell, 927 F.2d 413, 417-18 (8th Cir. 1991).

> The trustee must show that: (1) after commencement of the bankruptcy in question; (2) property of the estate; (3) was transferred; and (4) the transfer was not authorized by the bankruptcy court or by a provision of the Bankruptcy Code.

In re Kingsley, 208 B.R. 918, 920 (B.A.P. 8th Cir. 1997) (citing Russell). In this case, there is no dispute that after Debtor filed its Chapter 11 petition, property of the estate was transferred to Ms. Lex by the two wire transfers in question. The remaining issue is whether these transfers were authorized by the Court or by the Bankruptcy Code.

After filing a Chapter 11 petition, the debtor-in-possession has the power to operate the debtor's business. Russell, 927 F.2d at 418; 11 U.S.C. § 363(c)(1). This includes continuing the services of its salaried officers following the filing of the petition. In re DOLA Int'l Corp., 88 B.R. 950, 955 (Bankr. D. Minn. 1988). The court in DOLA described this as a statutory exception provided in 11 U.S.C. § 327(b) which allows a trustee or debtor-in-possession to retain professional persons "if the debtor has regularly employed" such persons on salary. DOLA Int'l, 88 B.R. at 955; 11 U.S.C. § 327(b). Such a person may work for a debtor without court approval and may be paid without court allowance without running afoul of the Code. In re Bartley Lindsay Co., 120 B.R. 507, 511 (Bankr. D. Minn. 1990), aff'd 137 B.R. 305 (D. Minn. 1991). For example, in In re All Seasons Indus., Inc., 121 B.R. 822, 826 (Bankr. N.D. Ind. 1990), the court held that a Chapter 11 debtor-in-possession is not required to obtain specific authority from the court to employ and compensate its pre-petition insider management following the

4

petition for relief, subject to review for reasonableness of the compensation.  <u>See also</u> <u>In re Bartley Lindsay Co.</u>, 137 B.R. 305, 309 (D. Minn. 1991) (finding § 327(b) allows the debtor-in-possession to retain persons the debtor has regularly employed without obtaining court approval); <u>In re Madison Management Group, Inc.</u>, 137 B.R. 275, 283 (Bankr. N.D. Ill. 1992) (noting employment of officers and employees is not subject to court approval).

 Ms. Lex argues that the payments she received from Debtor arose in the ordinary course of Debtor's business.  Trustee points out that Ms. Lex was working as a consultant, rather than a regular employee, and the payments were by wire transfer, rather than by check.  One court has held, in the context of considering priority wage claims under § 507(a)(3), that wages include compensation to all natural persons, whether employees or independent contractors.  <u>In re Wang Labs., Inc.</u>, 164 B.R. 404, 408 (Bankr. D. Mass. 1994).  Another court has stated that "the key distinction is between those claimants who are truly engaged in a master/servant relationship with the debtor and those who are engaged in a contractual relationship with the debtor."  <u>In re Grant Indus. Inc.</u>, 133 B.R. 514, 515 (Bankr. W.D. Mo. 1991).

 Section § 363(c)(1) allows a debtor to use property of the estate in the ordinary course of business without notice or a hearing.  <u>In re New Almacs, Inc.</u>, 196 B.R. 244, 249 (Bankr. N.D.N.Y. 1996). "Operational payments" under § 363(c)(1) allow the debtor to retain employees, hire outside services and maintain accounts with utility companies without having to seek the court's approval.  <u>Id.</u>  Whether a payment occurs "in the ordinary course of business" requires a peculiarly factual analysis.  <u>Lovett v. St. Johnsbury Trucking</u>, 931 F.2d 494, 497 (8th Cir. 1991) (considering "ordinary course" defense under § 547(b)).  "The creditor must be able to demonstrate some consistency between the transfers at issue and other transfers between the debtor and this creditor."  <u>In re Broadview Lumber Co.</u>, 168 B.R. 941, 950 (Bankr. W.D. Mo. 1994) (citing <u>Lovett</u> in preference analysis of salary and expense payments), <u>aff'd</u> 118 F.3d 1246 (8th Cir. 1997).

 Courts have utilized a two prong test to determine whether a transaction is within the debtor's ordinary course of business under § 363.  <u>In re Bridge Info. Sys., Inc.</u>, 293 B.R. 479, 486 (Bankr. E.D. Mo. 2003).

> The first prong, denominated the horizontal test, examines whether the transaction is of a type that is commonly undertaken within the debtor's industry. The second prong, labeled the vertical test, analyzes whether interested parties would reasonably expect the particular debtor in possession to seek court approval before entering into the questioned transaction.

<u>Id.</u> (citations omitted). The vertical test involves a comparison of the debtor-in-possession's prepetition business activities with its post petition transactions. <u>Habinger, Inc. v. Metropolitan Cosmetic & Reconstructive Surgical Clinic, P.A.</u>, 124 B.R. 784, 786 (D. Minn. 1990). These tests should be applied flexibly to effectuate the policy of § 363 "to balance the need of the debtor in possession to operate its business without excessive court intervention with protecting creditors' reasonable expectations by allowing them to object to transactions that may deplete the estate." <u>Bridge Info. Sys.</u>, 293 B.R. at 486.

## ANALYSIS

Debtor made postpetition payments to Ms. Lex on June 12 and June 19, 2002. These compensated Ms. Lex for services rendered prepetition. Debtor is authorized in Chapter 11 to operate its business and make operational payments without court approval.

Ms. Lex was an employee of Debtor since 1956 and worked as a consultant, with substantially the same duties, since January 2001. Debtor paid her weekly by check for her consulting services. Apparently, near the time Debtor filed its Chapter 11 petition, it got behind on paying Ms. Lex. At that point, Debtor began paying her by wire transfer. Comparing the prepetition history of payments from Debtor to Ms. Lex, Debtor's postpetition payments are substantially similar, although made by wire transfer rather than by check. The Court is not troubled by Debtor's use of wire transfer payments considering its financial difficulties just prior to the Chapter 11 petition being filed.

The Court finds that Ms. Lex provided valuable services to Debtor both before and after it filed its Chapter 11 petition. Debtor was operating its business and was authorized by the Bankruptcy Code to retain individuals such

6

as Ms. Lex, whether as employees or as independent contractors, and pay them for their services.  Based on the foregoing, the Court concludes Trustee has failed to prove the fourth element of § 549(a) that the transfers to Ms. Lex were not authorized by the Code.

**WHEREFORE**, Trustee's Complaint to recover property transferred to Defendant Lois Lex is DENIED.

**FURTHER**, Debtor's postpetition wire transfers to Ms. Lex on June 12 and June 19, 2002 were authorized under the Bankruptcy Code and are not avoidable under § 549(a).

DATED AND ENTERED: June 22, 2005

_____
PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE